Salveson, appearing for Appellant Reliance National Insurance Company. Your Honor, the district – your Honors, the district court below – I was going to say, you know, between the two of you and your clients, you've populated our jurisprudence and California jurisprudence with a lot of cases. I know. That's true. But I guess as insurance company parties, we like having insurance companies on the other side, so. In the district court below, the court ruled on cross motions for summary judgment that Reliance and St. Paul were co-primary insurers with respect to a loss suffered by N.L. Barnes Construction Company, which was a general contractor on a project at UC Davis. And the court noted that based on the insurance policies alone, as co-primary insurers, the principle of equitable contribution would apply and the insurance companies would split the cost of the loss. However, the district court decided that it was appropriate in the case to go on and between non-insurance companies, but instead by the insured N.L. Barnes with another entity, which was Richard Hancock Construction, which was a carpenter subcontract on the project. This is the so-called scaffolding agreement. The so-called scaffold agreement. And the district court, in looking at that agreement, decided that it provided that Richard Hancock owed an indemnity obligation to N.L. Barnes for injuries arising out of the use of scaffolding, certain scaffolding. Well, it certainly purported to do that. Isn't that not correct? Pardon? It certainly purported to shift liability, did it not? It did purport to shift liability, Your Honor. And the reason why we take issue with the district court's determination that ruling that it would shift liability back upstream to the insurance companies in this case is twofold. First of all, the scaffold agreement itself is unenforceable under California law. I wanted you to explain that to me, exactly why that's the case. Okay. Under the Labor Code Section 3864, if an action prosecuted by an employee against a third person results in a settlement by that third person, then the employee's employer shall have no liability to reimburse or hold such third person harmless in the absence of a written agreement to do so executed prior to the injury. Now, in our case, we had a settlement of a claim by Mr. Stevens against N.L. Barnes. Under the statute, then, Mr. Stevens' employer, which was Richard Hancock, shall have no liability to reimburse N.L. Barnes for that settlement in the absence of a written agreement to do so executed prior to injury. Well, this was executed prior to injury. It was signed by Hancock prior to injury. But under the Hanson Mechanical case, it was not executed. In order to be executed, it had to be signed by both parties. Well, here we have maybe performance. They allowed him to use the scaffolding. It was in return for the consent to use the scaffolding, we're going to do X. And they went ahead and used the scaffolding. So don't we have it then executed in that fashion? Not according to the Hanson Mechanical case, because those same facts pertain to Hanson Mechanical. That was a lease of a some kind of lift, which was used by the employer and the employee. But the court said that because this particular law is part of the workers' compensation scheme and is designed to be protective of both the employee and the employer, that the court absolutely required that the party to be benefited by this scaffold release in our case or the lease in the Hanson Mechanical case, the party to be benefited had to have executed the document, had to have signed it. The Hanson Mechanical case is quite clear about that. They held it was not too heavy a burden to place on the party to be benefited that it execute the agreement. And in fact, in that case, in the Hanson Mechanical case, it was similarly a receipt like we had here where there wasn't even a signature line for the party who was making the lease of the equipment. And the court said, well, that's even worse, because it wasn't even contemplated it would ever be executed, and that just does not meet the standards of 3864. So that is my explanation on 3864. If it were binding? If it were binding, let's suppose that we were to disagree with that, then what? Then I have the – well, then I do have the argument that the court should not have looked beyond the insurance policies. The insurance policies themselves, interpreted by themselves, show that the insurance companies were co-primary insurers. There was no need to go beyond that to indemnity obligations entered by nonparties to this action. Is there anything in the policies that would prohibit this type of liability shifting by the insureds? Well, I couldn't point to specific language in the policies. However, there is case law that says that insurers are not bound by contracts they're not parties to. So, for example, I think in the Reliance indemnity case at 72Cal up fourth, they said the insurer was not subject to contractual provisions to which it was not a party. And that was a similar situation where, in that case, Reliance was attempting to go beyond the insurance documents and get to an indemnity agreement. And the Court said no. You know, this is the we can decide based on the insurance policies, this dispute, and we're not going to the indemnity agreement. My further argument on that, Your Honor, is that the there's a provision, Civil Code Section 2782, which also prohibits agreements related to a construction contract which purport to indemnify the promisee against liability arising from the sole negligence of that promisee. And so to the extent the scaffold release was interpreted to excuse N.L. Barnes from its sole negligence, then it would be against public policy and unenforceable. So I neglected to mention I intend to reserve five minutes, so I'll do that when I see my light. All right. Sure. Could you address the distinction between equitable contribution and equitable subrogation, which has confused the California course? Yes. At least this judge is no better than the California courts on that, so I'll plead in need of clarification. I believe one of the cases observed that there was no more soporific language than subrogation, indemnity, construction, and insurance all rolled into one. It didn't put me to sleep. It kept me awake. Well, it seems to me that subrogation is a nonissue in this case. Yeah, there is no subrogation here, because there was no determination that anyone was negligent of anything below. And so that is why the Rossmore case, which is the California Supreme Court, which does deal with subrogation, does not apply here. In that case, we had a construction incident, a trial, or possibly a settlement of an amount paid by one of the parties, the owner of the company on which the construction site was located. And then that company's insurer sued the indemnitor, the party, the indemnitor, as well as added as a party to that was the insured of the insurance company, Rossmore. And so there was then a trial of whether Pyle owed Rossmore indemnity. The insurance companies were also party to that. And the court decided as a result of trial that the indemnity contract required that Pyle indemnify Rossmore. Pyle's insurance company said, well, you should look at the insurance companies and the insurance policies, and we should just split equally. There shouldn't be just the complete payment of the amount by Pyle to Rossmore. And the court said in this circumstance, it would not be equitable for us to allow Pyle and its insurer to get out of the resolution of the indemnity agreement that has occurred here. I mean, there has been a determination as under those contracts. And therefore, we are going to take that into account and we are going to enforce that. In our case, we do not have any determination of the sort. The parties are not the insureds are not parties to this case. It is simply a dispute between insurance companies. And for that reason, we submit the court should have stopped with its initial determination that we are co-primary insurers and equitable principles of equitable contribution should apply. And is that essentially what you were making as your fallback argument under the settlement of the scaffolding relief? Yes. Yes, Your Honor. Okay. And I would just note that the distinctions between subrogation and contribution are also discussed at some length in the traveler's case. No. I plead need of clarification, but not ignorance. Okay. The other thing, Your Honor, that we have asked for reversal of the judgment below. And one of the arguments made by St. Paul below was that reliance should not be allowed to get equitable contribution because of certain equitable defenses. And the court below did not reach those equitable defenses. We have requested that Your Honor reverse the judgment entirely and enter judgment for reliance in this court because of the state of the record. There's stipulated facts in this case. The facts are undisputed. We contend that there are no facts which would support any kind of finding that there's an equitable defense that St. Paul has in this case. If I could ask you a question about that. Yes. Isn't there a factual conflict as to whether reliance communicated to St. Paul that they would only be responsible, that St. Paul would only be responsible for anything over a million dollars and that that was denied by reliance? And wouldn't that go to whether St. Paul felt they needed to become involved in the settlement? I believe that the record reflects all the correspondence that occurred. And it's part of the stipulation between the parties. What happened was reliance agreed to accept a tender from N.L. Barnes. Okay. It did not accept a tender from St. Paul. Reliance owed a duty to N.L. Barnes. It was a co-primary insurer and it accepted the tender. But it never said to St. Paul, you're in the clear. It didn't express anything to St. Paul. Its communications were with its insured N.L. Barnes. So therefore, there was no statement by reliance to St. Paul that said, St. Paul, you're off the hook, don't worry. And, in fact, to the contrary, prior to the settlement conference in this matter, reliance did notify St. Paul that it should come to the settlement conference and that it should contribute as a primary co-insurer based on the doctrine of Maryland casualty. That is in the record. So I believe that those facts establish that not only that reliance never told St. Paul that it was off the hook, but to the contrary, it was invited to come and participate in the settlement and it declined. And as to that, I would also rely on the Mitchell-Silberberg case, which states that a party, an insurance company that accepts a tender from an insured, that it has no duty to reserve a right to contribution from the other insurance company.  And I think that's all I have to say. Thank you. Thank you. You may want to save the rest of your time. Oh, I will do that. Thank you. Good morning. Morning. Please, the Court and counsel. I'll be brief. I don't think I need all of my 20 minutes. Do you agree that absent the scaffolding release that the two companies were co-primary insurers? The two co- District court so found. I do not agree. You do not agree? I do not agree. Okay. We provided a 28-J letter to the Court, which cited the new case, St. Paul Mercury. In that case, they said the Court should look to the conduct of the underlying parties to determine whether or not the absent party was negligent in the underlying case. And if they did that here, they would find that there was some fault on behalf of Hancock, and that would have the effect of making Reliance primary, pursuant to paragraph B of their additional insured endorsement. So that would mean that they'd have to go back and be a trial now on the conduct, the underlying conduct? They'd have to conduct an investigation, yes. And that's what the St. Paul Mercury case stands for. If we don't, we end up with a weird situation where the next time it's standard, we say you can't take it because we want to litigate the cross-complaint to establish the negligence of your insured so that we can get equitable subrogation if we can't get equitable contribution. So in this case, if you replay it back, when the tender's made, we say, do you accept everything? Yes. Well, we want to continue with it. We want to file a cross-complaint against Hancock, and we want to establish Hancock's negligence, because if we do, then we can get equitable subrogation on the one hand, or in this case establish the clause B of the Reliance policy, which I think everybody would concede makes them primary if their insured is found to have any negligence. Secondly, we're in equity here. I heard Reliance talking a lot about the law and trying to get to verifying points and argue against integration, which is what the trial court found with regards to the scaffolding agreement. But we're in equity. And if you read the cases, and admittedly they're confusing and there are a lot of them, the courts are continually saying in this equitable contribution arena, you need to go to the underlying case. You need to see what the party's intended so that you can make a determination as to how to apply it. Otherwise, you do not get equitable results. I think Travelers, if I'm not mistaken, one of the Travelers of Maryland, also said where the underlying agreement doesn't involve insurance companies, they're not anxious to start injecting those issues into the dispute between the insurance companies, that it puts the insurer in the position of having to go off and litigate the conduct of its own insured. So it's not quite, at least as I read the cases, quite as clear as you just put it. Well, we respectfully disagree with the Maryland. We wouldn't be here if it weren't for Reliance v. Maryland. That came down just about the time that Reliance decided in this case that, gee whiz, we don't want to accept the responsibility that we've accepted. I think it's wrong, because if they don't do that, they are going to force us at the trial court level to litigate the indemnity issue every time, and that is clearly counter to public policy. That's what was stated in the case that we cited to the court in our 28J letter, the St. Paul Mercury case. And if you look at the Maryland case, it does talk about looking at the underlying contracts to determine, I'm sorry, nationwide, to determine what the parties intended. Because if you don't, you can end up with some very serious anomalies, a small subcontractor in the typical C.V. case having to defend the developer for the entire development. And the courts say no. Look at what the parties really intended. So you're suggesting we should ignore Maryland, the Maryland case? I think the court should review all of the cases, including the St. Paul case and others. I don't think we need to go that far. The trial court here got it right. As far as looking at and integrating the scaffolding agreement with the contract, you need go no further. Well, I'm not sure. The scaffolding agreement was much after the fact and seemed to be quite independent of the other contract. Well, I still think you have integration on the one hand, as the court found, if you follow through those cases. And secondly, we're in equity here. You know, one of the issues I find amusing, I've waited my entire career to be able to argue unclean hands. And if we actually get there and start talking about the waiver and estoppel, and I had enough trouble with equitable subrogation and equitable contribution and trying to rationalize the cases we have out here without going into those. But if we get there, we've got all kinds of arguments about unclean hands. But we're in equity here. What the court should be doing is trying to look at all of the circumstances and under that determine where the loss should be placed. The trial court did that. The trial court looked at all of the circumstances and determined that the intent of the parties in the underlying agreement was to place the risk of loss for the utilization of that scaffolding on the party utilizing it. Again, it makes sense in the business context. When the court asked whether there was anything. Time out a minute. Time out a minute. Maybe I'm oversimplifying it. This is a contest between two primary insurers who, absent the scaffolding agreement, would be on the hook 50-50. Would you disagree with that, absent the scaffolding agreement? Yes, I would. Again, based on the clause B. You say clause, then you're saying they actually, the insurance companies, actually when they entered into the coverage, anticipated that insureds could enter into a subagreement that would shift or trigger that liability. Absolutely. I mean, that's done every day. Look at the policy that Reliance issued. That policy says under paragraph A of the additional insured endorsement, the general contactor will be an additional insured. Under paragraph B, it says if our insured is found to be negligent, then we will be primary and non-contributory. This is done every single day. It's part of underwriting with the idea that you're going to shift the loss into one particular place. It's contemplated in the policy. And when the court asked whether or not it could be assumed, I would again direct them to the Reliance policy, paragraph B, of the additional insured endorsement that specifically addresses the situation. And that's why I say we need to go, if we need to go back to lower court, then we need to determine whether or not Hancock was in fact negligent, whether or not he could have been found liable in the case because of California Labor Code and the exclusivity of the workers' comp. Do you agree that this scaffolding agreement is unenforceable or contrary to law? I'm sorry? Do you agree with opposing counsel that this scaffolding agreement is contrary to law and unenforceable? If it is not integrated with the original subcontract. You would agree with that? I would agree that I would not be able to use it to prosecute an action against Hancock in the underlying case. I don't think it changes the fact that Hancock would still have some negligence. Hanson Mechanical does stand for the proposition that both parties must execute the contract to allow express indemnity from a contractor to an otherwise exempt employer. So the trial court found integration by reviewing California law and then applied the proper legal standard by looking at the Rossmore case. Now, this new case came down in 2003, right, the one you're citing to us, the St. Paul Marine? What site? The site? The 28J letter was a 2003 decision, correct? Yes. All right. So that was not presented to the district court? It was not. Okay. So if you had followed, if you'd had that case, what would have happened before the district court to trigger Clause B? Because the court looked, as I read his opinion, looked at Clause B and decided that that was not triggered, that it did not override as between the two insurance companies the status of co-primaries. The court specifically found that the negligence of the employer was not before him and was not in the underlying case, so it didn't go there. Right. St. Paul Mercury says you should go there. If we go, for example, to the record. I'm sorry. One at a time. So if that's the case, what you just said, so what should have then happened? Who had the burden under St. Paul Marine to bring into the case litigation of the underlying negligence? Was that incumbent upon Reliance to do that or for you to do that? I think to establish the applicability of Clause B, it was on the, it would have been on St. Paul, and I think that we tried to do that. We directed the court to the record. I believe it's the record starting at about 259 or 260, which may not be per se evidence in the underlying case, but, again, we're in equity where the Reliance evaluator of the claim says that he expects both the employee and the employer to be found negligent. That's in the record at, I think, 260, and it's just the notes of the employee. But we were. And whose negligence would you be proving? We would be establishing that at least the employer had some percentage of responsibility to trigger Clause B of the additional insured endorsement. I think under the facts of the case. The employer being Hanson. Hancock. The employer being Reliance, primary insured and the Hancock, being Hancock and the employer of the plaintiff who was injured. And I think it's pretty easy to contemplate that that negligence would, in fact, be established. They made some modifications to the scaffolding, as indicated in the record in the stipulated facts. They were working on the scaffolding, and the man finds himself off of the scaffolding and down on the ground. And if, again, on the record, I think, that's in there, there's strong indication that there was a significant issue of contributory negligence, which would have been at the employees that could be imputed to the employer for the purposes of triggering Clause B of the additional insured endorsement. So I think that the Court got it right in finding integration. I think the Court, in applying equity and recognizing we're in equity here, I mean, Reliance wants to get very hyper-technical about the scaffolding agreement and so on, but what we're trying to do is adjust the loss between two parties that don't have a relationship going in. And what's contemplated? I think if one looks at the way the Reliance policy is written for a subcontractor, it's contemplated that they may well be the primary carrier in a situation like this. If the case, if the courts find that there is not integration and therefore believes that the trial court got it wrong, then I think the case needs to be remanded under the St. Paul Mercury case so that we can look at the issue of the underlying negligence. And we can then address the issues of unclean hands, waiver, and estoppel that really weren't addressed because the Court didn't feel it had to go there. We can address those here and now, I think, on the record, but it's going to take us into a whole new set of cases. And I think the simple answer is that Reliance came in, took over the defense, obviously didn't prosecute a cross-complaint against their own insured, which would have established negligence and their obligation to pay all of this, grabbed the defense, told St. Paul, your excess, we're primary, and they ran with it for more than a year, and then just before the settlement decided, well, now we've kind of changed our minds. And I think probably the most ‑‑ Can you point me to someplace in the record where they told St. Paul that they were excess? Where they told St. Paul they were? Mm-hmm. It is in the record, and perhaps while I face rebuttal, I can look it up for you, because it is, I think counsel will even concede that when they first came in, there was correspondence between the parties. I cannot give you page and verse, but I'll look for it, where they specifically said something to the extent you may wish to keep your file open, as this case may have a value of more than a million dollars. That is in the record someplace, and I'll see if I can find it for the Court. Okay. All right. Thank you. Addressing the last question about whether Reliance agreed St. Paul was an excess carrier, Reliance did notify St. Paul and I believe ‑‑ or not St. Paul, but N.L. Barnes, and they probably copied St. Paul's adjuster on the letter that, you know, because the case had an exposure of possibly over a million dollars, that, you know, that Barnes would want to possibly, you know, review its other options with respect to other coverage. Now, that was perfectly proper, because Reliance, remember, was defending as one of the co‑primary insureds, its coverage was $1 million, and it under no circumstances was going to pay more than a million dollars. And so in the ‑‑ it was proper and normal in the eventuality that there was a result that went over a million dollars that the insured needed to know that Reliance wasn't providing coverage there. So, again, this was an issue between Reliance and the insured. I'd like to address the St. Paul Mercury insurance case, which counsel cited in his recent submission. And in that case, again, like the Supreme Court case, Rossmore, the underlying insureds were parties in the new case, the St. Paul Mercury insurance. That was a case involving a crane accident, and the lessor of the crane was a party, the lessee of the crane was a party, the insurance companies were parties. So we did have a forum there for the Court to analyze the extraneous contracts beyond the insurance companies, or beyond the insurance policies, I should say. The other thing that I think is critical to keep in mind with our case is that there is no evidence in the record that Hancock was negligent. That was not a premise of St. Paul's position below. And, in fact, below, and in our briefs here, we pointed out that the party who is attempting to show negligence has the burden of proof on that issue. That's California Evidence Code Section 521. That was cited below in the district court, it was cited here. Because there's no basis on which this coverage B in the reliance policy could be activated, it doesn't apply, that's what the district court found. And so we're dealing simply with a situation under coverage A where reliance is insuring N.L. Barnes just under the additional insured provision. And coverage A does not have the language that coverage B has. Coverage B says if we're defending because of our named insurance negligence, then we will be primary and other insurance will be excess. That's what coverage B says. But that is not activated in this case. The defense is under coverage A because there's no negligence by Hancock that was asserted below or was established in the record. Kennedy. How would the negligence have been introduced, then, in this case? Who would have brought it in and what would have been the process? I think as St. Paul conceded just moments ago, it had the burden to raise that issue and to put in evidence that Hancock was negligent. The parties below chose to litigate this based on the fact that there had been no determinations of negligence, that this was being litigated without regard to who was at fault. And for that reason, the court below should have stopped with the insurance policies. And I urge this Court to say that the to reverse on the result on the case below. Okay. Your time is up. Thank you. Thank you. We have a cite from your colleague. Thank you. I did find a reference in the record, 173, a letter from Reliance to Patricia. I'm going to leave it there because it's a tough name and would be hard to spell out. But it's a letter dated March 24th, 2000. And the letter says to whom? To Barnes? No. This is to a person at St. Paul Fire and Marine Insurance Company from Reliance Insurance Company. Okay. All right. All right. Thank you very much. And would you like me to? Tell me what it says. It specifically says, since the liability limits available at N.L. Barnes under its own commercial general liability policy with St. Paul is the next available layer and could be exposed, you may wish to employ separate counsel at St. Paul's expense, resume your involvement in the litigation, and participate in any mediations or settlement conferences so that you can protect your named insurance interest over and above the $1 million per occurrence in the Reliance policy. All right. Okay. Thank you very much. Okay. You don't get to it. Do you have more? I was just going to also give the Court a cite specifically on the negligence issue to the record. Oh, that's fine. In which, again, within the claim handler for Reliance, so I think it's a declaration potentially against interest, there are a number of evaluations to the claim. One found on the record at 260, liability versus Barnes probable, likely more than 30 percent comparative either plaintiff or employer, that meaning the plaintiff or Hancock, the Reliance insured. So that's in the record that was before the contract. What was the cite on that? That's the record 260. Thank you. Okay. Thank you both for the argument. The case is now submitted, and we stand in adjournment. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: B. Fletcher,fisher, Roll